IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL DUTCHER,<br><br>      Plaintiff,<br><br>v.<br><br>MID IOWA REGIONAL HOUSING AUTHORITY,<br><br>      Defendant. | No. 12-CV-3081-DEO<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT and ORDER ON MOTION FOR SANCTIONS |

_____

## I.   INTRODUCTION

Currently before this Court is Defendant Mid Iowa Regional Housing Authority's [hereinafter MIRHA] Motion for Summary Judgment.  Docket No. 18.  The parties appeared telephonically for a hearing on February 12, 2014.  After hearing the parties' arguments, the Court took the issues under advisement.  Also before the Court is a Motion for Sanctions filed by the Plaintiff on February 20, 2014.  Docket No. 36.

## II.   FACTUAL HISTORY

The following is an overview of the agreed facts and the areas of disagreement.

The Defendant, MIRHA, is a Public Housing Agency located in Fort Dodge, Webster County, Iowa. It operates a Housing Choice Voucher program in several north-central Iowa counties. MIRHA assists low income families, the elderly, disabled individuals and other individuals in obtaining affordable housing. Mr. Dutcher was hired by MIRHA around April 26, 2010, to be its Housing Inspector. At the time Mr. Dutcher was hired, MIRHA had a total of four employees: Mr. Dutcher; Anita Michael, Housing Coordinator II; Beverly Verschoor, Executive Director; and, Romana Hundertmark, FSS Coordinator. During the relevant time period, Jackie Bellinghausen was the President of MIRHA's Board.

Mr. Dutcher's job duties included completing annual inspections of properties on the Housing Choice Voucher program, initial inspections of new properties following acceptance of the request for tenancy approval, and occasional special inspections. He was responsible for the time, scheduling, and completion of inspections to keep MIRHA in compliance with Housing and Urban Development [hereinafter HUD] regulations. Other duties included client interviews, rent calculation, and assisting applicants and landlords and

others with questions, applications, information, and any other duties assigned by the Executive Director. Plaintiff further states that, generally, his job consisted of conducting home reviews, performing home inspections, helping clients complete Section 8 assistance paperwork, and miscellaneous duties around the office.

It is undisputed that Mr. Dutcher had concerns regarding MIRHA's operation. At the beginning of 2011, Mr. Dutcher began questioning MIRHA's Executive Director Verschoor and Ms. Michael, its Housing Coordinator II, on various matters dealing with MIRHA's management and day-to-day operations. As set out by the Defendant, those matters included: (1) rent calculations for clients in "group homes"; 2) allowing certain clients to rent from family members; 3) adjusting payment standards for disabled clients; 4) time card fraud involving Ms. Verschoor and Ms. Michael; 5) improperly collecting an overpayment from one client and not seeking to collect overpayments from other clients; 6) falsification of Section Eight Management Assessment Program (SEMAP) scoring for fiscal year 2011; 7) one instance of a client receiving a medical deduction who was not entitled to it; and 8) MIRHA spending

$165,000.00 more than it took in for the fiscal year 2011. (The Plaintiff disagrees with the eight-part division of Mr. Dutcher's complaints.  See Docket No. 23, Att. 8, p. 7.)

Mr. Dutcher pursued his complaints about MIRHA in a number of ways.  For instance, Mr. Dutcher testified during his deposition that he raised issues he perceived regarding improper rent calculations for people in "group homes" with both Beverly Verschoor and Anita Michael near the beginning of 2011.  Mr. Dutcher also testified that he discussed collecting overpayments of rental assistance from a client, Don Herrick, with Ms. Verschoor.  He further testified that based on his complaints, Ms. Verschoor stopped collecting the overpayments.

Mr. Dutcher also had concerns about how certain medical deductions were given to people who received 'spend downs' from the Iowa Department of Human Services.  Specifically, Mr. Dutcher informed Ms. Verschoor that medical deductions should only be given for actual out of pocket expanses.  MIRHA subsequently contacted HUD and began correctly applying medical deductions.

Additionally, when Mr. Dutcher discovered information that suggested MIRHA was engaged in conduct in violation of

4

HUD regulations, rules, and other requirements, he brought those situations to Ms. Verschoor's or Ms. Bellinghausen's attention. On March 15, 2012, Mr. Dutcher sent an e-mail to Ms. Bellinghausen entitled "Fraud and Mis-appropriation of HUD Funds." On March 28, 2012, Dutcher gave Ms. Verschoor a letter to give to the MIRHA Board in a sealed envelope and instructed her to give it to the Board at a Special Board meeting on March 28, 2012. Mr. Dutcher sent Ms. Bellinghausen another email regarding "Fraud and mis-appropriation of HUD Funds" on March 17, 2012. In that email, Mr. Dutcher stated, "I was trying to do the right thing by exposing the fraud and waste of HUD funds." Mr. Dutcher sent another email to Ms. Bellinghausen on March 19, 2012. Mr. Dutcher also availed himself of a website, HUDCLIPS, to assist in his 'investigation.' HUDCLIPS provides information related to HUD programs.

One of Mr. Dutcher's larger complaints to the Board at the March 14, 2012, meeting was the fact that MIRHA spent $165,000.00 more than it took in for 2011. As set out in the parties' documents, MIRHA attempted to explain the deficiency, but MIRHA failed to allay Mr. Dutcher's concerns. Another

issue about the year 2011 which concerned Mr. Dutcher was that as a result of the 2011 audit, HUD reduced MIRHA's Section Eight Management Assessment Program score. The Section Eight Management Assessment Program (SEMAP) measures the performance of the public housing agencies (PHAs) that administer the Housing Choice Voucher program in 14 key areas. SEMAP helps HUD target monitoring and assistance to PHA programs that need the most improvement.[1]

Mr. Dutcher also felt that Ms. Verschoor and Ms. Michael were not keeping accurate time cards, and attempted to keep track of possible work-time discrepancies.

Mr. Dutcher was also concerned about MIRHA providing assistance to people who are renting living quarters from family members. Allowing people who reside with a family member to receive housing assistance is a violation of the applicable regulations, unless that person is disabled. MIRHA argues that it only provided assistance to those living with family if they were disabled. Mr. Dutcher disagrees.

---

[1]    HUD.Gov,U.S. Department of Housing and Urban Development, viewable at:
http://portal.hud.gov/hudportal/HUD?src=/program_offices/public_indian_housing/programs/hcv/semap ; last accessed on March 18, 2014.

6

Mr. Dutcher's attention to the above listed issues caused tension at MIRHA.  On April 2, 2012, Ms. Verschoor terminated Mr. Dutcher.  The Defendant does not dispute the fact that Mr. Dutcher was terminated or that his termination was a result of his complaints.  See Docket No. 18, Att. 1, p. 10-11, stating:

> Verschoor did not have any issues with Dutcher's performance of his job as a Housing Inspector during the time he was employed at MIRHA.  Dutcher started to question everything Verschoor and Michael were doing and they got the feeling he was telling them how to do their jobs after the March 14, 2012 MIRHA Board Meeting... Verschoor decided with MIRHA Board approval to let Dutcher go.  It was clear that Dutcher would not accept Verschoor's or the Board's explanation for financial matters about which he had no personal knowledge, and that Dutcher would not stop letting his concerns interfere with the operations of MIRHA.

After being terminated, Mr. Dutcher filed the present case.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P., Rule 56(c).  A fact is *material* if it is necessary "to establish the existence of an element essential to [a]

party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. <u>See</u> <u>Matsushita</u>, 475 U.S. at 587; and <u>Morris v. City of Chillicothe</u>, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing <u>Thomas v. Corwin</u>, 483 F.3d 516, 526-27 (8th Cir. 2007)).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

## IV. ISSUES

Defendant's Motion for Summary Judgment raises three main issues. First, the Defendant argues that Mr. Dutcher did not engage in a protected activity. Next, the Defendant argues that Mr. Dutcher's conduct was not in furtherance of a False Claims Act ["FCA"] action. Finally, the Defendant argues that Mr. Dutcher's termination does not violate public policy. The Court will consider each of these issues in turn. The Court will also consider the Plaintiff's Motion for Sanctions.

## V. ANALYSIS

### A. Motion for Sanctions

The first issue the Court will address is the Plaintiff's Motion for Sanctions, Docket No. 36. As was noted above, hearing was held on the pending Motion for Summary Judgment on February 12, 2014. On February 17, 2014, the Defendant filed Docket No. 35, a Supplement to their Motion for Summary Judgment. The Supplement consists of a declaration by Beverly Verschoor, a MIRHA employee. In the declaration, Ms. Verschoor disputes Mr. Dutcher's claim that Ms. Verschoor did not perform certain inspections. The Supplement also contains 'Inspection Checklists,' purporting to confirm that Ms. Verschoor performed the disputed inspections.

On February 20, 2014, the Plaintiff filed a Motion for Sanctions. Docket No. 35. In that document, the Plaintiff argues that:

> [o]n February 12, 2014, a telephonic hearing on MIRHA's summary judgment motion was held before Senior Judge Donald E. O'Brien. At the conclusion of that hearing, nearly two hours in length, Judge O'Brien declared MIRHA's motion fully submitted. On February 17, 2014, MIRHA filed a Supplemental Declaration of Beverly Verschoor... It is improper to attempt to

> insert additional documents or testimony
> into the summary judgment record at this
> point given that the issues have been fully
> briefed by the parties and the Court has
> already heard oral arguments and that MIRHA
> has had a year to produce the documents to
> the Plaintiff. Wherefore, for the reasons
> stated herein, and the reasons set forth in
> the Plaintiff's supporting Brief, Plaintiff
> respectfully asks the Court to sanction
> MIRHA by striking the Supplemental
> Declaration of Beverly Verschoor and the
> Quality Control Inspections and for such
> other relief as the Court deems proper.

Docket No. 36, p. 1-2.

On February 28, the Defendant filed a Response to the
Motion for Sanction. Docket No. 38. In its Response, the
Defendant argues that during the Motion for Summary Judgment
hearing, the Plaintiff brought up new claims related to Ms.
Verschoor and the quality control inspections. Docket No. 38,
p. 2. The Defendant goes on to argue that:

> [t]he Court Order following the Summary
> Judgment Hearing stated "[t]he offering
> party must, within 3 days after hearing,
> file in electronic form any exhibit that
> was not filed with a motion, resistance, or
> other filing related to this hearing."
> Verschoor's Supplemental Declaration was
> filed within the three (3) day time limit
> set by the Court for additional filings
> related to the hearing.

Docket No. 38, p. 2-3. The Defendant argues that based on the quoted language from the Court's Hearing Minute document and the history of the parties' discovery exchanges, the Plaintiff has suffered no prejudice from the post-hearing filing and it should be considered by the Court. Id., p. 3.

The language quoted by the Defendant, "[t]he offering party must, within 3 days after hearing, file in electronic form any exhibit that was not filed with a motion, resistance, or other filing related to this hearing;" is not relevant to the present controversy. That is standard language in the Court's Hearing Minute document, and it means that any exhibit offered during a hearing must be filed within three days. See Pub. Admin. Order 09-AO-03-P (05/29/09), ¶ 7. The Defendant's Supplement was not offered during the hearing; in fact, the Defendant admits that the Supplement only exists because of an argument/allegation that the Plaintiff made during the hearing. Accordingly, the Defendant's Supplement falls far outside the definition of an 'exhibit' that must be filed after a hearing per the Pub. Admin. Order. The Court notes that it is beyond clear that the language quoted from the Hearing Minutes, Docket No. 34, is not independent authority

under which a party may choose to supplement the record after a hearing.

That said, the Court is persuaded that the Plaintiff is not prejudiced by the Supplement. As both parties note, the Court has broad authority to allow supplements to the record. In this case, the Defendant has decided to rebut a factual allegation made by the Plaintiff during oral argument. As was stated above, summary judgment is only appropriate if there is no genuine issue of material fact. The fact that the Defendant feels the need to rebut a (factual) allegation made by the Plaintiff during the oral argument is, itself, evidence that there is a genuine issue of material fact in this case. In considering whether summary judgment is appropriate, the Court will not wade into those factual disputes. Factual disputes are for the jury to decide. The Court rules only on the law. Accordingly, the only information the Court gleans from the Defendant's Supplement is that there is another factual dispute. Since the Plaintiff argues that summary judgment is not appropriate in this case because there is a genuine issue of material fact, the Defendant's admission of another factual dispute is not prejudicial to the Plaintiff.

**Accordingly, the Plaintiff's Motion for Sanctions, Docket No. 36, is denied**. The Court will consider the Defendant's Supplement, Docket No. 35, along with all the other documentation in this case.

**B. Federal False Claims Act**

This case arises, mainly, under the Federal False Claims Act [hereinafter FCA].

> The False Claims Act imposes liability on anyone who "(1)'knowingly presents, or causes to be presented, [to a federal official] a false or fraudulent claim for payment or approval,' or (2) 'knowingly makes ... a false record or statement to get a false or fraudulent claim paid or approved.'" <u>U.S. ex rel. Roop v. Hypoguard USA, Inc.</u>, 559 F.3d 818, 822 (8th Cir. 2009) (quoting 31 U.S.C. § 3729(a)(1)-(2)). The Act is intended to "protect the federal [fiscal interests] by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money." <u>U.S. ex rel. Vigil v. Nelnet, Inc.</u>, 639 F.3d 791, 796 (8th Cir. 2011).

<u>United States ex rel. Schell v. Bluebird Media, LLC</u>, 12-CV-04019, 2013 WL 3288005 (W.D. Mo. June 28, 2013).

Mr. Dutcher brings a claim under the FCA's whistle blower protection provision, which provides relief for employees who engage in conduct protected by the False Claims Act and are

discharged, demoted, or experience other discriminatory consequences as a result. 31 U.S.C. § 3730(h).

> In order to prove retaliation under this section, a plaintiff must prove that (1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity. Id.

Schuhardt v. Washington Univ., 390 F.3d 563, 566 (8th Cir. 2004).

> Protected activity is established when the employee's actions satisfy two conditions. First, the employee's conduct must have been in furtherance of an FCA action. See United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996) (quoting 31 U.S.C. § 3730(h)). Second, the employee's conduct must be aimed at matters which are calculated, or reasonably could lead, to a viable FCA action. Id.

Schuhardt, 390 F.3d at 567.

Courts have stated that the type of retaliation claim maintained by Mr. Dutcher in this case must be based upon possible fraudulent conduct against the United States government. See Mahony v. Universal Pediatric Servs., Inc., 753 F. Supp. 2d 839, 847, Fn. 5 (S.D. Iowa 2010) aff'd, 643 F.3d 1103 (8th Cir. 2011) citing 31 U.S.C. §§ 3729, 3730(b),

15

(h)(1).  As noted above, FCA actions may be maintained by either the government or a person who knows of false or fraudulent claims made to the United States government.  The later type of action, maintained by private individuals, is known as a qui tam action.  31 U.S.C. § 3729.  Thus, relevant to retaliation claims, the actions taken by a plaintiff must be actions that could form the basis of a qui tam action such as gathering evidence or alerting the government of possible fraud, even if the plaintiff is unaware of the FCA or qui tam actions at the time he does so.  United States ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 741 (D.C. Cir. 1998); United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996).

However, "[t]he protected activity element of a retaliation claim does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation.  United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 236 (1st Cir. 2004)(overturned on other grounds by United States ex rel. Gagne v. City of Worcester, 565 F.3d 40 (1st Cir. 2009)).  Indeed, § 3730(h) protects internal whistle blowers who make

16

a complaint about fraud against the government." <u>Schuhardt</u>, 390 F.3d at 567. In fact:

> [i]n terms of § 3730(h), an employee can be acting "in furtherance of an action under this section"- can be engaging in protected activity- although the employee is not contemplating bringing a qui tam suit, is not even aware that there is such a thing as a qui tam action, and has no idea whether his- the employee's- investigation or other acts, if made known to the government, might cause the Attorney General to sue his employer under the False Claims Act. From this, it follows that the employer may incur liability under § 3730(h) even if the employer has no inkling that a False Claims Act suit may be in the offing.

<u>United States ex rel. Schweizer v. Ocn N.V.</u>, 677 F.3d 1228, 1238 (D.C. Cir. 2012).

The purpose of 31 U.S.C. § 3730(h), the Senate Judiciary Committee said, was to "assure those who may be considering exposing fraud that they are legally protected from retaliatory acts." S. Rep. No. 99-345, at 34, reprinted in 1986 U.S.C.C.A.N. at 5299. "The legislative history of [31 U.S.C.] § 3730(h) suggests that "[p]rotected activity ... be interpreted broadly" S. REP. NO. 99-345, at 35 (1986), and the

court will follow that suggestion." <u>Collins v. Ctr. For</u> <u>Siouxland</u>, C10-4015-PAZ, 2011 WL 2893038, 15 (N.D. Iowa July 15, 2011).

**C. Protected Activity – Lead to a Viable FCA Claim**

As discussed above, in order to prove retaliation under this section, a plaintiff must prove that (1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity. The Defendants seem to concede that Mr. Dutcher's employer retaliated against him (he was fired by MIRHA) and that the retaliation/termination was motivated by Mr. Dutcher's allegedly protected activity (his numerous and varied complaints). The Defendant's argument is, mainly, that Mr. Dutcher's activity – his complaints against MIRHA– do not actually constitute protected activity as contemplated by the FCA.

Protected activity is established when the employee's actions satisfy two conditions: (1) the employee's conduct must have been in furtherance of an FCA action; (2) the

employee's conduct must be aimed at matters which are
calculated, or reasonably could lead, to a viable FCA action.
The Defendant's first set of argument (seems to) deals with
the second part of the protected activity standard:  whether
Mr. Dutcher's conduct could reasonable lead to a viable FCA
action.

As stated in the Defendant's brief:

> Dutcher cannot show that any of the eight
> (8) issues he raised involved knowingly
> presenting a false or fraudulent claim to
> the Federal Government for payment or
> approval or in which a legitimate FCA
> action could be filed.  Therefore, the
> actions taken by plaintiff "must be actions
> that form the basis of a qui tam such as
> gathering evidence or alerting the
> government of possible fraud, even if the
> plaintiff is unaware of the FCA or qui tam
> actions at the time he does so." Mahony v.
> Universal Pediatric Servs., Inc., 753 F.
> Supp. 2d 839, 846 (S.D. Iowa 2010) aff'd,
> 643 F.3d 1103 (8th Cir. 2011)(citing United
> States ex rel. Yesudian v. Howard Univ.,
> 153 F.3d 731, 741 (D.C. Cir. 1998); United
> States ex rel. Hopper v. Anton, 91 F.3d
> 1261, 1269 (9th Cir. 1996)).  None of
> Dutcher's activities or the eight (8)
> issues involves anything that would have
> been actionable under the FCA.

Docket No. 18, Att.1, p. 16.  The Defendant then goes through
each of the items on Mr. Dutcher's list of complaints (as
structured by the Defendant) and argues that they could not

lead to a viable FCA claim.  In regards to the time card issue, the Defendant argues:

> Dutcher raised the issue of time card fraud ... Specifically, Dutcher alleged that Verschoor and Michael, MIRHA's Housing Coordinator II at the time, falsified their time cards.  Dutcher's claim fails because any alleged time card fraud cannot be related to a false claim under the FCA. MIRHA does not present its employees' time card records to HUD or any other department of the United States Government for payment or approval.  MIRHA employees are paid out of its Administrative Funds, none of which is submitted to HUD or any other Federal Government Agency for payment or approval. MIRHA receives the same federal funding whether it has two employees or four employees.  It receives the same funding whether its employees work 30, 40, or 50 hours per week...  Dutcher's allegations as to timecard fraud are nothing more than speculation.  Speculation regarding "potential" fraud cannot serve as the basis for invoking protection of the FCA Whistleblower's Statute and, in fact, flies in the face of the Act's requirement that the belief must be in good faith.  <u>Mahony</u>, 753 F. Supp. 2d at 849 (citing <u>Wilkins v. St. Louis Housing Auth.</u>, 314 F.3d 927, 933 (8th Cir. 2002)).  Even if Dutcher in good faith had a subjective belief, subjective beliefs need to be supported by a viable statement, documents, or other evidence. <u>Mahony</u>, 753 F. Supp. 2d at 849.  Dutcher has no such statement, documents or other evidence.  Dutcher is not protected from retaliation of the False Claims Act because

> he had no reasonable basis for believing
> there was fraud in the submission of a
> claim for federal money by MIRHA.

Docket No. 18, Att. 1, p. 17-19. Regarding the allegation
that MIRHA improperly allowed clients to rent from family
members, the Defendant argues:

> Dutcher's sole source for determining
> whether this was an acceptable practice or
> not was his on-line research on HUDCLIPS
> and his interpretation of Federal
> Regulations on this issue... Any MIRHA
> client renting from a family member is a
> person with a disability who MIRHA has
> determined that renting a unit to that
> individual would provide a reasonable
> accommodation. Thus, MIRHA was not
> submitting any false claims for payment to
> HUD... He was responsible for scheduling
> and completion of said inspections to keep
> MIRHA in compliance with federal
> regulations. He had additional duties
> which included client interviews, rent
> calculations and assisting applicants and
> landlords and others with questions,
> applications and information – in other
> words, answering questions about who could
> rent from who and making sure MIRHA was in
> compliance with HUD regulations, including
> 24 C.F.R. §982.306(d).

> If an employee's "protected conduct" under
> the FCA is part of his regular job
> responsibilities or duties, that employee
> is required to take an additional step
> before his actions are found to be
> "protected conduct" under the FCA. Maturi
> v. McLaughlin Research Corp., 326 F. Supp.
> 2d 313, 320 (D.C. RI 2004). In those

situations, the employee "must 'make clear' that they will bring or assist in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations."

Docket No. 18, Att. 1, p. 19-20.

The next issue addressed by the Defendant is Mr. Dutcher's allegation that MIRHA improperly raised payments for disabled clients. The Defendant states:

Dutcher raised the issue that MIRHA was increasing the payment standard for rent for disabled clients. Payment standard amounts and schedules are governed by 24 C.F.R. § 982.503... Any change in the payment standard for disabled clients made by MIRHA during Dutcher's employment was set within the "basic range" of 90% and 110% and, therefore, MIRHA did not need HUD approval to establish a payment standard. Verschoor attempted to explain this to Dutcher, but he chose not to accept her explanation.

Docket No. 18, Att. 1, p. 21. Similarly, regarding rent calculations for group homes, the Defendant argues:

Dutcher thought MIRHA was calculating the rent to be paid for "group homes" incorrectly. Dutcher contended for a "group home" MIRHA should take the payment standard and divide it by 4, in other words, in a 4-bedroom house, MIRHA was giving the four (4) individuals a 1-bedroom voucher instead of the payment standard for a 4-bedroom unit divided by four (4). In other words, MIRHA was paying approximately

> two (2) times the amount of benefits for a
> 4-bedroom "group home" than it should
> have... Dutcher's belief as to the rent
> calculation for "group homes" was based
> upon his incorrect assumption that they
> were licensed, certified or otherwise
> designated by the State of Iowa as group
> homes. Thus, his claim that the rent was
> being incorrectly calculated was also
> incorrect. The "group homes" to which
> Dutcher was referring were actually
> congregate housing. 24 C.F.R. §982.606
> (2012)...
>
> Given the fact that these units were
> congregate housing and not group homes,
> MIRHA correctly calculated the rent payment
> standard. Since rent calculation was one
> of Dutcher's regular job duties, he needed
> to "make clear" to MIRHA that he would
> bring or assist in an FCA action and he did
> not do so.

Docket No. 18, Att. 1, p. 22-23.

Regarding the improper collection of overpayment benefits, the Defendant agrees that MIRHA over collected payments from a client, Don Herrick. However, the Defendant states that once Mr. Dutcher brought the issue to MIRHA's attention, the situation was corrected. The Defendant also argues that any other decision regarding the collection of overpayments was within MIRHA's discretion. Similarly, Mr. Dutcher raised a concern that a MIRHA client was receiving an improper medical deduction for a spend-down. After Mr.

Dutcher raised the issue, it was corrected, and MIRHA argues
that this was a technical error and does not amount to false
claim, citing <u>Luckey v. Baxter Healthcare Corp.</u>, 183 F.3d 730,
733 (7th Cir. 1999).

More seriously, Mr. Dutcher alleges that Ms. Verschoor
falsified MIRHA's SEMAP score, specifically, by claiming to
have done quality control inspections that never occurred.  In
response, the Defendant argues that if Mr. Dutcher thought
fraud had been committed, he should have reported it on a
questionnaire provided by MIRHA's auditor.  The Defendant goes
on to argues that:

> Verschoor did not falsify MIRHA's SEMAP
> score for 2011.   HUD requires MIRHA to
> undergo an annual audit as a checks and
> balances system.  One purpose of the audit
> is to ensure that MIRHA's federal programs
> are in compliance with the requirements of
> the laws, regulations, contracts and grants
> applicable to each of its major federal
> programs. MIRHA's auditor Niewedde & Wiems
> in its fiscal year 2011 audit concluded
> that MIRHA "complied, in all material
> respects, with the requirements referred to
> above that could have a direct and material
> effect on each of its major federal
> programs for the year ended June 30, 2011."
>
> Yearly audits are then forwarded to HUD for
> review and HUD can and does adjust SEMAP
> scores based upon its review of the audit
> findings... Based upon the audit findings,

> HUD reassessed MIRHA's 2011 SEMAP score and
> reduced it to 42%. MIRHA's Executive
> Director Verschoor then must provide the
> auditor with MIRHA's response to the audit
> findings and corrective action be taken to
> address those findings. After MIRHA's
> corrective actions were put into effect and
> confirmed by HUD, MIRHA received a final
> SEMAP score of 85%, which indicates a
> "standard performer".

Docket No. 18, Att. 1, p. 28-29.

The final subdivided issue the Defendant responds to is Mr. Dutcher's allegation regarding the fact that MIRHA spent $165,000.00 more than it took in during 2011. The Defendant's argument is that Mr. Dutcher misunderstood the difference between a calendar year and fiscal year, and his calculation was improperly based up on MIRHA's draft accounting for the calendar year 2011. The Defendant states that when MIRHA's fiscal year 2011 is properly accounted, no deficiency exists and Mr. Dutcher's claim is baseless. The Defendant concludes:

> [a]n employee who "fabricates a tale of
> fraud to extract concessions from the
> employer, or who just imagines fraud but
> lacks proof, legitimately may be sacked .
> . . [E]mployees who use reports of fraud to
> better their own position, or behave like
> Chicken Little, impose costs on employers
> without advancing any of the goals of the
> False Claims Act". Luckey, 183 F.3d at 733
> (citing Neal v. Honeywell Inc., 33 F.3d
> 860, 864 (7th Cir. 1994)). Saber rattling

and accusations are not protected conduct,
only investigation, testimony and
litigation are protected, and none of these
led to Dutcher's discharge.

Docket No. 18, Att. 1, p. 31.

Mr. Dutcher responds by arguing:

MIRHA argues that Dutcher's attempts to
expose mismanagement and misappropriation
of HUD funds with regard to MIRHA's
$165,000 deficit in 2011 were not protected
conduct under the FCA because the deficit
did not involve presenting false or
fraudulent claim to the government for
payment... In so doing, MIRHA
oversimplifies what constitutes a "claim"
under the FCA, and it advances a cramped
interpretation of what constitutes a
"request or demand, whether under a
contract or otherwise, for money or
property" under the FCA... In other words,
because MIRHA already received money from
HUD, and none of the issues Dutcher raised
involved requests for additional funding,
Dutcher did not complain about anything
that could constitute a false claim under
the FCA.

Docket No. 23, Att. 8, p. 8-9.

In making this argument, the Plaintiff relies on the case

of United States ex rel. Yesudian v. Howard Univ., 153 F.3d

731, 734 (D.C. Cir. 1998). The arguments in that case are

similar to those presently before the Court. In that case,

the plaintiff Yesudian worked for Howard University, which

received some federal funding. Yesudian "charged that [his superior] falsified time and attendance records for his administrative assistant, provided inside information to favored vendors to aid them in the bidding process, accepted bribes from vendors, permitted payments to vendors who did not provide services to the University, and took University property home." United States ex rel. Yesudian, 153 F.3d at 734. Eventually, after years of making the same complaints, Yesudian was terminated by Howard University. He sued under the same theory as Mr. Dutcher. A jury returned a verdict in his favor, but the District Court granted a post verdict judgment as a matter of law in favor of Howard University. Yesudian appealed. The D.C. Circuit framed the relevant issues in Yesudian's case:

> [t]he district court concluded there was no evidence from which the jury could reasonably have found the first element of a retaliation claim "that Yesudian had engaged in protected conduct" because "he never initiated a government investigation or a private qui tam suit" during the time he was making his complaints. Yesudian, 946 F. Supp. at 33. The court also concluded there was no evidence to support the first part of the second element "that the defendant knew Yesudian was engaged in protected activity" because Yesudian "never suggested to defendant that he intended to

utilize his allegations in furtherance of a False Claims Act action" and "gave no suggestion that he was going to report the alleged improprieties to government officials." <u>Id.</u> Defendant Parker asserts an additional reason in support of the court's conclusion on the first element: because there was no evidence that a false claim ever was presented to the U.S. Government, Parker contends, Yesudian cannot establish that he was engaged in protected conduct.

<u>United States ex rel. Yesudian</u>, 153 F.3d at 736-37. Focusing on the claim that Yesudian's bosses' misappropriations did not amount to a false claim under the FCA because Howard University had already received a set amount of federal funds and the fraud requested no new Federal money, the D.C. Circuit stated:

[a]s Yesudian suggests, it is also possible to read the language to cover claims presented to grantees, but "effectively" presented to the United States because the payment comes out of funds the federal government gave the grantee. Such a reading would be in harmony with the legislative history. As the Senate Judiciary Committee put it, without adding any "presentation" caveat, "a false claim to the recipient of a grant from the United States or to a State under a program financed in part by the United States is a false claim to the United States."

<u>United States ex rel. Yesudian</u>, 153 F.3d at 738.

The same situation is present in this case. The Defendant repeatedly argues that even if some fraud existed, say in regards to MIRHA employee's time cards, those allegations did not constitute a false claim against the government because MIRHA's federal funding was not impacted by individual employee's time cards. However, for the same reasons set out in <u>Yesudian</u>, the Court is persuaded that the Defendant's argument fails. Whether valid or not, Mr. Dutcher clearly was investigating what he perceived to be the fraudulent use of federal money. Although none of the issues investigated by Mr. Dutcher were "new" or active financial grants from the federal government, MIRHA had previously received and was operating with federal money. (MIRHA does not dispute employees are paid with federal funds.) Accordingly, to the extent the Defendant argues that Mr. Dutcher has failed to allege protected activity because he had no reasonable basis for believing there was fraud in the submission of a claim for federal money by MIRHA, that argument is denied. As stated in the Plaintiff's brief:

> [w]ith each of these specific complaints, Dutcher sought to expose that the government was paying money it either was not required to pay or should not have been

> paying. That is sufficient to establish
> that Dutcher, in making these complaints,
> was engaged in protected activity for
> purposes of the anti-retaliation provision
> of the FCA.

Docket No. 23, Att. 8, p. 10. Mr. Dutcher has presented a
fact issue on whether MIRHA had committed a false claim
against the government.

As stated above, the Defendant also repeatedly makes
factual allegations about Mr. Dutcher's claim. For example,
the Defendant argues that no $165,000 deficiency existed in
MIRHA's 2011 budget. Mr. Dutcher disagrees. Those arguments
cannot be decided by summary judgment. Factual disputes need
to be decided by the finder of fact.

Courts have repeatedly stated:

> "[t]he protected activity element of a
> retaliation claim does not require the
> plaintiff to have filed an FCA lawsuit or
> to have developed a winning claim at the
> time of the alleged retaliation."
> Schuhardt, 390 F.3d at 565 (citing United
> States ex rel. Karvelas v. Melrose-
> Wakefield Hosp., 360 F.3d 220, 236 (1st
> Cir. 2004)); see McKenzie v. BellSouth
> Telecomms., Inc., 219 F.3d 508, 516 (6th
> Cir. 2000) ("An employee ... need not
> expressly know that the FCA allows qui tam
> actions to be filed against their employer,
> or have already filed such an action to be
> protected from retaliation under §
> 3730(h).). "Indeed, § 3730(h) protects

> internal whistleblowers who make a
> complaint about fraud against the
> government." <u>Schuhardt</u>, 390 F.3d at 565
> (citing <u>Robertson v. Bell Helicopter
> Textron, Inc.</u>, 32 F.3d 948, 951 (5th Cir.
> 1994)); see also <u>Green v. City of St.
> Louis</u>, 507 F.3d 662, 668 (8th Cir. 2007)
> (an FCA retaliation claim can be asserted
> if employee alerted employer to possible
> fraud on the government).

<u>Collins</u>, 2011 WL 2893038 at 10.  To be clear, the law does not require that Mr. Dutcher uncover all evidence necessary to successfully prosecute a case against MIRHA under the FCA, nor must Mr. Dutcher resolve all factual disputes.  The law only requires that Mr. Dutcher have made a claim (blown the whistle) that he believed MIRHA had engaged in fraud against the government.  That Mr. Dutcher did.

The Defendant argues that Mr. Dutcher's concerns were unfounded.  That may well be the case.  However, regardless of how persuasive the Defendant is that MIRHA's accounting for 2011 was above board, for example, that argument does not defeat the fact that Mr. Dutcher pursued his belief that mis-use of government money had occurred.[2]  Moreover, Mr.

---

[2]  This type of factual dispute – whether quality control inspections were completed – forms the basis of the Defendant's Supplement and the Plaintiff's Motion for Sanctions, discussed in Section (a) above.

Dutcher's claims amounted to more that baseless 'sabor rattling.' For example, the Defendant admits that Mr. Dutcher was correct that mistakes were being made at MIRHA regarding overpayments and medical deduction. Mr. Dutcher's conduct was aimed at matters which reasonably could have lead to a viable FCA action. Accordingly, he has created a fact issue on that portion of the 'protected activity' standard.

In a similar vain, the Defendant repeatedly mentions the fact that Mr. Dutcher did not report his concerns to MIRHA's auditor. There is no requirement that to constitute protected activity, a whistle blower must report a claim to a specific individual or agency. Mr. Dutcher advised his superiors and MIRHA's Board of his concerns. That is sufficient to show he was engaged in an activity which could reasonably lead to a viable FCA action.

**D. Protected Activity - Conduct in Furtherance of an FCA Action**

The Defendant's second argument (which is not very distinct from their first argument) is that Mr. Dutcher's actions were not in furtherance of an FCA action, which is

the first element required to show protected activity.  The

Defendant argues:

> Dutcher cannot establish another required
> element of his claim – that any of his
> conduct was in furtherance of an FCA
> action.  Mahony, 753 F. Supp. 2d at 846.
> Dutcher's "investigation" into all of the
> eight (8) issues was looking at HUDCLIPS,
> keeping track of Michael's time on his desk
> calender on six (6) dates, and reviewing an
> unaudited financial statement given to him
> at MIRHA's Board meeting in January 2012
> prepared by MIRHA's Executive Director
> Verschoor.  He did not gather any documents
> to support his claims nor did he contact
> HUD or any other federal governmental
> agency to report his concerns or
> investigate those concerns.  Many of the
> issues he raised were part of his regular
> job duties.  He did not start to raise any
> issues until he found out he was getting a
> $1.50 raise when the two (2) women in the
> office received a $2.00 raise and after his
> claim that MIRHA violated the Equal Pay Act
> and his civil rights did not result in him
> receiving an additional 50 cent raise.
> Then, with little or no investigation on
> his part, he started leveling accusations.

Docket No. 18, Att. 1, p. 31-32.  The Defendant goes on to

say:

> Dutcher did not use the words "illegal" or
> "unlawful" or "threat of a qui tam action"
> when he raised any of the eight (8) issues
> with MIRHA's Executive Director Verschoor.
> The only time he used the word "fraud" was
> when he alleged timecard fraud on behalf of
> Verschoor and Michael, which was

speculation and did not involve a false claim which was presented to the federal government for payment or approval. He did not contact anyone from HUD or any other federal governmental agency to report any of his concerns. He did not refuse to do anything claiming it was illegal or unlawful.

Docket No. 18, Att. 1, p. 32-33.

As was extensively discussed above, "the protected activity element of a retaliation claim does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation... § 3730(h) protects internal whistleblowers who make a complaint about fraud against the government." Schuhardt, 390 F.3d at 567. It is true that activities that are completely within a plaintiff's job description cannot be used as the sole basis for a claim under the FCA. However, as set out in the Plaintiff's brief:

> [n]otably absent from Dutcher's job description or his general duties monitoring timecards, making exceptions to payment standards, making final determinations regarding group home rates and medical spend-downs, identifying and pursuing collection of overpayments, completing MIRHA's SEMAP certification form, or otherwise monitoring the agencies['] operations for potential fraud. (Stmt. of Addl. Facts ¶ 2). While, from a

34

> legal standpoint, MIRHA's argument would be
> easier if Dutcher's complaints fell within
> his job duties, the reality is that they
> did not, and MIRHA's argument necessarily
> fails. (Stmt. of Addl. Facts ¶ 1).

Docket No. 23, Att. 8, p. 25. It seems highly unlikely that Mr. Dutcher's job duties included attempting to monitor timecards or reporting problems to MIRHA's Board. Additionally, there is dispute between the parties about what exactly Mr. Dutcher's job duties were. Accordingly, the extent of Mr. Dutcher's job duties and whether his complaints were part of those duties is a factual dispute that is not ripe for resolution.

Mr. Dutcher created a fact issue on whether his actions were in furtherance of an FCA action. There is no magic word requirement regarding protected activity. Mr. Dutcher repeatedly made it clear to his superiors, including MIRHA's Board, that he felt MIRHA was misusing funds in a variety of ways. The situation would be different if Mr. Dutcher identified an isolated clerical error or some other minor issue with MIRHA's records. But Mr. Dutcher complained of large scale problems, including an alleged budget shortfall of $100,000, in a very public manner. Even if he never used the

word "illegal," it is clear that Mr. Dutcher communicated his
belief that something was very wrong with the way MIRHA was
using federal funds.  As stated in the Plaintiff's brief:

> Dutcher used more compelling words than the
> Eighth Circuit highlighted in <u>Schuhardt</u> to
> put MIHRA on notice that he was engaging in
> activity protected by the FCA.  Among other
> things, Dutcher used repeatedly used words
> like "fraud," misappropriation of HUD
> finds," and "waste of government funds" in
> the emails he sent Board President
> Bellinghausen.

Docket No. 23, Att. 8. p. 25.  Accordingly, Mr. Dutcher has
created a fact issue regarding whether he engaged in protected
activity and his claim must be allowed to proceed.

As discussed above, in order to prove retaliation under
FCA, a plaintiff must prove that (1) the plaintiff was engaged
in conduct protected by the FCA; (2) the plaintiff's employer
knew that the plaintiff engaged in the protected activity; (3)
the employer retaliated against the plaintiff; and (4) the
retaliation was motivated solely by the plaintiff's protected
activity.  The Defendant's arguments and preceding discussion
relate primarily to (1), whether Mr. Dutcher engaged in
protected activity.  The Court is persuaded that Mr. Dutcher
has created an issue of fact on the protected activity

question.  Turning to the other elements of a retaliation, the Defendant essentially concedes (3) and (4).  As stated above, Mr. Dutcher was fired by MIRHA because of his complaints.  The only remaining question is (2), whether MIRHA was on notice that Mr. Dutcher engaged in protected activity.

As stated in the Plaintiff's brief:

> [i]n considering a motion for summary judgment, the Court's role is to determine "whether there are genuine issues of material fact with respect to notice." U.S. ex rel. Schweizer v. Oce N.V., 677 F.3d 1228, 1239 (D.C. Cir. 2012).  An employer is sufficiently on notice that an employee has engaged in protected activity under the FCA even when the employer does not know and has not been advised that the things about which the employee complains would violate the FCA.  Yesudian, 153 F.3d at 742...  The Eighth Circuit has adopted the position that "an employee's report of illegal or unlawful activity is sufficient to put an employer on notice that the employee is engaged in protected activity." Schuhardt, 390 F.3d at 568.  In Schuhardt, the court found that the plaintiff's statements to her supervisors that her employer was fraudulent and illegal were "sufficient to overcome a motion for summary judgment based on lack of notice." Id.

Docket No. 23, Att. 8, p. 24-25.  Mr. Dutcher reported activity that he felt violated HUD regulations and other legal requirements.  Accordingly, MIRHA was on notice that he had

37

engaged in protected activity. **Because Mr. Dutcher has created a fact issue on all four elements of retaliation claim, summary judgment is not appropriate and the Defendant's Motion must be denied**.

**E.   Public Policy**

The final issue discussed by the Defendant is Mr. Dutcher's claim that his termination by MIRHA violated Iowa's public policy against wrongful termination. The parties generally agree on Iowa's wrongful termination/public policy law. As set out in the Defendant's brief:

> [e]ven though Iowa follows the common law employment-at-will doctrine, it does recognize the public policy exception to that doctrine. <u>Mahony v. Universal Pediatric Servs., Inc.</u>, 753 F. Supp. 2d 839, 851 (S.D. Iowa 2010) aff'd, 643 F.3d 1103 (8th Cir. 2011)(citing <u>Jasper v. H. Nizam, Inc.</u>, 764 N.W.2d 751, 761 (Iowa 2009)). In order to establish termination in violation of public policy a plaintiff must prove: "(1) existence of a clearly defined public policy that protects employee activity; (2) the public policy would be jeopardized by the discharge from employment; (3) the employee engaged in protected activity, and this conduct was the reason for the employee's discharge; and (4) there was no overriding business justification for the termination. <u>Mahony</u>, 753 F. Supp. 2d at 851 (citing <u>Lloyd v. Drake Univ.</u>, 686 N.W.2d 225, 228 (Iowa

> 2004))... Federal and Iowa courts have
> recognized that Iowa's cause of action for
> wrongful discharge exists "for the purpose
> of protecting an employee against
> retaliation when a statutory right is
> conferred but no statutory remedy is
> provided.

Docket No. 18, Att. 1, p. 35-36. The Defendant goes on to

argue:

> [b]ecause the FCA expressly provides the
> statutory retaliation remedy upon which
> Dutcher relies for Count I of his
> Complaint, Dutcher cannot maintain his
> common law cause of action based upon the
> same conduct. <u>Id.</u> Dutcher also fails to
> identify a specific Iowa statute,
> administrative regulation or constitutional
> provision setting out the public policy he
> is attempting to invoke. Whether a public
> policy exists in the first place is a
> question of law for the Court's
> determination.

Docket No. 18, Att. 1, p. 36-37.

However, the Plaintiff points out that a case from the

Iowa Court of Appeals extended the public policy exception to

the violation of a federal statute. See <u>Smuck v. Nat'l Mgmt.</u>

<u>Corp.</u>, 540 N.W.2d 669, 672 (Iowa Ct. App. 1995). In that

case, the Iowa Court of Appeals stated:

> Iowa courts recognize an exception to the
> employment at-will doctrine where discharge
> violates well-recognized and defined public
> policy... Although Iowa has not yet

> identified federal law standing alone as a
> source of public policy in wrongful
> termination cases, several other states
> have adopted federal law as state policy...
> We agree with these courts that federal
> law can serve as an appropriate source for
> state public policy... We base our holding
> on our belief that state and federal law
> need not be mutually exclusive. The mere
> fact that a violation of a federal law is
> the basis for a wrongful termination claim
> does not as a matter of law preclude a
> finding that state public policy was
> violated.

<u>Smuck</u>, 540 N.W.2d at 672 (internal citations omitted). The

Plaintiff argues that based on <u>Smuck</u>, this Court should allow

Mr. Dutcher's wrongful termination claim to proceed.

Magistrate Judge Strand recently considered this issue and

concluded:

> While the Iowa Supreme Court has not
> expressly adopted the holding in <u>Smuck</u>, it
> has cited <u>Smuck</u> favorably, with no
> suggestion of disagreement. See <u>Clements
> v. Gamblers Supply Mgmt. Co.</u>, 610 N.W.2d
> 847, 850 (Iowa 2000). As such, I agree
> with [the plaintiff] that Iowa recognizes
> a clearly defined public policy against
> defrauding the federal government. I also
> agree that this policy would be undermined
> by discharging an employee who reports, or
> refuses to participate in, such conduct.

<u>Vails v. United Cmty. Health Ctr., Inc.</u>, C11-4048-LTS, 2012 WL

6045941 (N.D. Iowa 2012). Based on those cases, the Court is

persuaded that Mr. Dutcher's public policy/wrongful

termination claim is recognized by Iowa law.  **Because there are clear questions of fact on this issue, Mr. Dutcher's wrongful termination claim will be allowed to proceed.  The Defendant's Motion for Summary Judgment on this issue is denied.**

## VI.  CONCLUSION

For the reasons set out above, the Defendant's Motion for Summary Judgment, Docket No. 18, is **denied**.  Additionally, Plaintiff's Motions for Sanctions, Docket No. 36, is **denied**.

**IT IS SO ORDERED** this 21st day of March, 2014.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa